**THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**ASHEVILLE DIVISION**
**CIVIL CASE NO. 1:16-cv-00175-MR**

| | | |
|---|---|---|
| **SHERRY FULLER QUEEN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **MEMORANDUM OF** |
| **vs.** | ) | **DECISION AND ORDER** |
| | ) | |
| **NANCY A. BERRYHILL, Acting** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| _____ | ) | |

**THIS MATTER** is before the Court on the Plaintiff's Motion for

Summary Judgment [Doc. 9] and the Defendant's Motion for Summary

Judgment [Doc. 10].

**I.     PROCEDURAL HISTORY**

The Plaintiff Sherry Fuller Queen first filed an application for a period

of disability benefits, disability insurance benefits, and supplemental security

income ("SSI") benefits on October 25, 2004, alleging an onset date of

October 19, 1993. [See Transcript ("T.") 99]. The Plaintiff's claim was denied

initially and on reconsideration. [Id.]. At the request of the Plaintiff, an

administrative law judge ("ALJ") held a hearing to review the Plaintiff's claim,

resulting in an unfavorable decision on September 17, 2008 ("the 2008 ALJ decision"). [T. 96-108].

The Plaintiff filed a second application for SSI benefits on May 4, 2010, alleging an onset date of November 1, 2006.[1] [T. 22, 161]. The Plaintiff's application was denied initially and on reconsideration. [T. 22, 109, 119]. At the Plaintiff's request, an ALJ held a hearing on June 13, 2011, at which the Plaintiff and a vocational expert testified. [T. 22, 37]. At the hearing, the Plaintiff amended her alleged onset date to May 4, 2010.[2] [T. 22, 41]. On August 19, 2011, the ALJ issued a written decision ("the 2011 ALJ decision"), finding that the Plaintiff was not disabled within the meaning of the Social Security Act since May 4, 2010. [T. 19- 32]. The Appeals Council denied review of the 2011 ALJ decision on March 5, 2013, making the ALJ's decision the final decision of the Commissioner. [T. 1-6].

The Plaintiff filed yet another application for SSI benefits on May 7, 2013. [T. 572]. The following day, on May 8, 2013, the Plaintiff initiated a civil action in this Court seeking review of the 2011 ALJ decision. [See Civil

---

[1] The Plaintiff's first application was filed when she was still insured for Title II benefits, and therefore she sought benefits under both Title II and Title XVI. All of the subsequent applications filed by the Plaintiff were for Title XVI (SSI) benefits only.

[2] Because a claimant is not eligible for SSI benefits for any time period before the application is filed, see 20 C.F.R. § 416.335, the relevant date for determining the "onset of disability" becomes the application date.

Case No. 2:13-cv-00021-FDW-DSC, Doc. 1].  On November 18, 2013, the

Honorable Frank D. Whitney, Chief United States District Judge, entered an

Order granting the Defendant's consent motion for remand pursuant to

sentence four of 42 U.S.C. § 405(g) for further administrative proceedings.

[Id., Doc. 12].  In the remand order, Judge Whitney specifically directed as

follows:

> Upon remand, the administrative law judge (ALJ) will be directed to consider the findings in the claimant's prior hearing decision, dated September 17, 2008, under Acquiescence Ruling 00-1(4); reevaluate the treating and nontreating source opinions pursuant to the provisions of 20 C.F.R. § 416.927 and Social Security Rulings (SSR) 96-2p and 96-5p; and explain the weight given to the treating and nontreating source opinion evidence. The ALJ should also reevaluate the North Carolina disability determination for Medicaid and the third-party opinion evidence from the claimant's stepmother in accordance with SSR 06-03p. On remand, the ALJ will be directed to give Plaintiff an opportunity for a new hearing, to further develop the record, and issue a new decision.

[Id. at 1].

The Appeals Council issued a remand order on February 11, 2014,

vacating the decision of the Commissioner and remanding the case to an

ALJ for further hearing.  [T. 572-74].  Specifically, the Appeals Council found

that the 2011 ALJ decision failed to give proper consideration to the findings

made in the 2008 ALJ decision; that the 2011 ALJ decision did not address

in the RFC two non-examining state agency physicians (Drs. Woods and Garner) limiting the Plaintiff to medium exertional work based on her hypertension and migraines; and that the 2011 ALJ decision failed to address a North Carolina Department of Health and Human Services determination that the Plaintiff is disabled for the purposes of Medicaid eligibility and further failed to address the third-party opinion evidence provided by the Plaintiff's step-mother.  [T. 572-73].

In remanding the case, the Council noted the Plaintiff's subsequent application for SSI benefits filed on May 7, 2013, and ordered the ALJ to "associate the applications and address them in the hearing decision."  [T. 572].  Additionally, the Council directed the ALJ on remand to:

- Consider the findings in the [Plaintiff's] prior hearing decision dated 2008 in accordance with AR-001(4).

- Give further consideration to the [Plaintiff's] maximum residual functional capacity during the period at issue and provide specific references to evidence of record in support of the assessed limitations (Social Security Ruling 96-8p).  In so doing, evaluate the treating and nontreating source opinions pursuant to the provisions of 20 CFR 416.927 and Social Security Rulings 96-2p and 96-5p, and explain the weight given to such opinion evidence; and reevaluate the NC disability determination for Medicaid and third party opinion evidence in accordance with SSR 06-03p.

- Based on the updated record, further evaluate the [Plaintiff's] subjective complaints and provide rationale in accordance with the disability regulations pertaining to evaluation of symptoms (20 CFR 416.929 and Social Security Ruling 96-7p).

- If warranted by the expanded record, the [ALJ] will obtain supplemental evidence from a vocational expert to clarify the demands of the [Plaintiff's] past relevant work and/or of the assessed limitations on the [Plaintiff's] occupational base (Social Security Rulings 83-12, 83-14, 85-15, and/or 96-9p). The hypothetical questions should reflect the specific capacity/limitations established by the record as a whole. The [ALJ] will ask the vocational expert to identify examples of appropriate jobs and to state the incidence of such jobs in the national economy (20 CFR 416.966). Further, before relying on the vocational expert evidence the [ALJ] will identify and resolve any conflicts between the occupational evidence provided by the vocational expert and the information in the Dictionary of Occupational Titles (DOT) and its companion publication, the Selected Characteristics of Occupations (Social Security Ruling 00-4p).

[T. 573-74].

A hearing was held on October 14, 2014, before Administrative Law Judge Alice Jordan ("ALJ Jordan"). [T. 478-517]. The Plaintiff testified at this hearing, as did a vocational expert ("VE"). On December 22, 2014, ALJ Jordan issued a decision denying the Plaintiff benefits. [T. 451-69]. The Appeals Council denied the Plaintiff's request for review, thereby making the ALJ's decision the final decision of the Commissioner. [T. 441-43]. The

Plaintiff has now exhausted all available administrative remedies, and thus this case is ripe for review pursuant to 42 U.S.C. § 405(g).

## II.    STANDARD OF REVIEW

The Court's review of a final decision of the Commissioner is limited to (1) whether substantial evidence supports the Commissioner's decision, see Richardson v. Perales, 402 U.S. 389, 401 (1971), and (2) whether the Commissioner applied the correct legal standards, Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).  The Court does not review a final decision of the Commissioner de novo.  Smith v. Schweiker, 795 F.2d 343, 345 (4th Cir. 1986).

The Social Security Act provides that "[t]he findings of the Commissioner of any Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ."  42 U.S.C. § 405(g).  The Fourth Circuit has defined "substantial evidence" as "more than a scintilla and [doing] more than creat[ing] a suspicion of the existence of a fact to be established.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Smith v. Heckler, 782 F.2d 1176, 1179 (4th Cir. 1986) (quoting Perales, 402 U.S. at 401).

The Court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner, even if it disagrees with the

Commissioner's decision, so long as there is substantial evidence in the record to support the final decision below. Hays, 907 F.2d at 1456; Lester v. Schweiker, 683 F.2d 838, 841 (4th Cir. 1982).

## III. THE SEQUENTIAL EVALUATION PROCESS

In determining whether or not a claimant is disabled, the ALJ follows a five-step sequential process. 20 C.F.R. § 416.920. If the claimant's case fails at any step, the ALJ does not go any further and benefits are denied. Pass v. Chater, 65 F.3d 1200, 1203 (4th Cir. 1995).

First, if the claimant is engaged in substantial gainful activity, the application is denied regardless of the medical condition, age, education, or work experience of the applicant. 20 C.F.R. § 416.920. Second, the claimant must show a severe impairment. If the claimant does not show any impairment or combination thereof which significantly limits the claimant's physical or mental ability to perform work activities, then no severe impairment is shown and the claimant is not disabled. Id. Third, if the impairment meets or equals one of the listed impairments of Appendix 1, Subpart P, Regulation 4, the claimant is disabled regardless of age, education or work experience. Id. Fourth, if the impairment does not meet the criteria above but is still a severe impairment, then the ALJ reviews the claimant's residual functional capacity (RFC) and the physical and mental

demands of work done in the past.  If the claimant can still perform that work, then a finding of not disabled is mandated.  Id.  Fifth, if the claimant has a severe impairment but cannot perform past relevant work, then the ALJ will consider whether the applicant's residual functional capacity, age, education, and past work experience enable the performance of other work.  If so, then the claimant is not disabled.  Id.  In this case, the ALJ's determination was made at the fifth step.

## IV.    THE ALJ'S DECISION

In denying the Plaintiff's claim, the ALJ found that the Plaintiff has not engaged in substantial gainful activity since May 4, 2010, the application date.  [T. 456].  The ALJ then found that the medical evidence established that the Plaintiff has the following severe impairments: hypertension, migraines, anxiety, depression, post-traumatic stress disorder, social phobia, borderline personality disorder, and bipolar disorder.  [T. 457-61].  The ALJ specifically found that the Plaintiff's allegation of back pain to be non-medically determinable.  [T. 461].  The ALJ further found that the Plaintiff's diagnoses of GERD and irritable bowel syndrome and the Plaintiff's history of alcohol abuse to be non-severe.  [Id.].

At step three, the ALJ determined that none of Plaintiff's impairments, either singly or in combination, met or equaled the criteria of listings 12.04, 12.06, and 12.08.  [T. 461].

The ALJ then assessed the Plaintiff's residual functional capacity (RFC), finding as follows:

> [T]he [Plaintiff] has the residual functional capacity to perform medium work . . . except she can occasionally interact with the public and frequently interact with coworkers; she is limited to the performance of unskilled work requiring no more than simple, routine and repetitive tasks in a work environment that does not require fast-paced production.

[T. 463-67].  The ALJ then determined that the Plaintiff has no past relevant work.  [T. 468].  Considering the Plaintiff's age, education, work experience, and RFC, the ALJ further concluded that there are jobs that exist in significant numbers in the national economy that the Plaintiff can perform.  [T. 468-69].  The ALJ therefore concluded that the Plaintiff has not been "disabled," as defined by the Social Security Act, since the date the application was filed.  [T. 469].

## V. DISCUSSION[3]

The Plaintiff asserts three assignments of error. First, the Plaintiff argues that the ALJ erred in failing to find that she met or equaled Listing(s) 12.04, 12.08, and/or 12.09. Second, the Plaintiff argues that the ALJ did not properly evaluate the medical evidence of record. Third, the Plaintiff contends that the relevant hypothetical question was incomplete or incorrect, such that the ALJ could not properly rely on the vocational expert's (VE's) testimony. The Court will address each of these assignments in error in turn.

### A. Whether Plaintiff Met or Equaled Listing 12.04, 12.08 or 12.09

A claimant bears the burden of proving that she meets or equals a Listing. See Radford v. Colvin, 734 F.3d 288, 291 (4th Cir. 2013) (stating that the claimant bears the burden of proof through step four of the sequential evaluation). In addition, "[f]or a claimant to show that [her] impairment matches a listing it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Sullivan v. Zebley, 493 U.S. 521, 530 (1990) (footnotes and citation omitted). Similarly, "[f]or a claimant to qualify for benefits by showing that [her] unlisted impairment, or combination of

_____

[3] Rather than set forth the relevant facts in a separate section, the Court has incorporated the relevant facts into its legal analysis.

impairments, is 'equivalent' to a listed impairment, [she] must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Id. at 531 (footnote and citation omitted).

Here, the Plaintiff argues that her mental impairments meet or equal Listing 12.04, Listing 12.08, or Listing 12.09.[4] [See Doc. 9-1 at 9-12]. For the reasons set forth below, however, the Court concludes that the Plaintiff has not demonstrated that she satisfied all of the criteria for any of these Listings.

### 1. Listing 12.04 (affective disorders) and Listing 12.08 (personality disorders)

Listing 12.04 addresses affective disorders, which are "[c]haracterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (12.04). "The required level of severity for these disorders is met when the requirements in both [paragraphs] A and B are satisfied, or when the requirements in [paragraph] C are satisfied." Id.

Listing 12.08 addresses personality disorders, which exist "when personality traits are inflexible and maladaptive and cause either significant

---

[4] The Plaintiff does not challenge the ALJ's determination that the Plaintiff's impairments do not meet or equal Listing 12.06 (anxiety related disorders).

impairment in social or occupational functioning or subjective distress." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (12.08). The characteristic features of a personality disorder "are typical of the individual's long-term functioning and are not limited to discrete episodes of illness." Id. The required level of severity for a personality disorder "is met when the requirements in both [paragraphs] A and B are satisfied." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (12.08).

Under both Listings 12.04 and 12.08, the "paragraph B" criteria are satisfied when the claimant's affective disorder(s) result(s) in at least two of the following: (1) "[m]arked restriction of activities of daily living" (ADLs); (2) "[m]arked difficulties in maintaining social functioning"; (3) "[m]arked difficulties in maintaining concentration, persistence, or pace" (CPP); or (4) "[r]epeated episodes of decompensation, each of extended duration." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (12.04 and 12.08).

Substantial evidence supports the ALJ's finding that Plaintiff did not meet or equal Listing 12.04 or Listing 12.08 because she did not satisfy the requirements of paragraph B. First, there is substantial evidence in the record to support the ALJ's finding that Plaintiff had only mild restriction in ADLs. Specifically, as the ALJ noted, the Plaintiff reported to Dr. Barnes that she was able to complete all household chores, care for her personal needs,

cook meals, drive, and shop. [T. 352-53, 461]. Further, at the hearing, the Plaintiff testified that she spent time with her mother and stepfather, cared for her personal hygiene, watched TV, drew, colored, did laundry, did dishes, changed sheets, vacuumed, dusted, shopped, planted flowers, and drove. [T. 461-62, 489-92].

There is also substantial evidence to support the ALJ's finding that the Plaintiff had only moderate difficulties in social functioning. As the ALJ noted, Dr. Johnston found in his March 2010 evaluation that the Plaintiff was cooperative with the examination, appeared to have normal mood and affect, and had appropriate behavior. [T. 337-39, 462]. Additionally, Dr. Barnes opined in an August 2010 consultative examination that the Plaintiff was only mildly impaired in social interaction. [T. 356, 462]. Additionally, more recent medical records, from September and December 2013, indicated that the Plaintiff's anxiety was under control. [T. 462, 1035, 1053]. Further, as the ALJ noted, the Plaintiff testified at the hearing that she spent time with her family and was able to shop in public. [T. 462, 489, 491-92].

Additionally, there is substantial evidence to support the ALJ's finding that the Plaintiff had only moderate difficulties in concentration, persistence and pace. Specifically, as the ALJ noted, Dr. Barnes opined that the Plaintiff was not impaired in understanding, memory, concentration, or persistence.

[T. 356, 462]. Dr. Willingham opined in her June 2013 consultative examination report that the Plaintiff had a fair ability to sustain attention and concentration. [T. 462, 987]. Further, as the ALJ noted, the Plaintiff testified at the hearing that she continued to drive, an activity which requires a fair degree of concentration. [T. 462, 492].

Regarding the final factor of the paragraph B criteria, the ALJ found that the Plaintiff had experienced no episodes of decompensation of any extended duration. There is substantial evidence to support the ALJ's findings in this regard. The record indicates that the Plaintiff received in-patient psychiatric care on two occasions, but that neither of these hospitalizations was of extended duration. [T. 279, 423, 462]. The preamble to the mental-disorders listings explains that the term "repeated episodes of decompensation, each of extended duration" means "three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks." 20 C.F.R. Pt. 404, Subpt. P, App. 1 (12.00.C.4). The Plaintiff's 2009 hospitalization, lasting from June 17th to the 22nd [see T. 279], and the 2011 hospitalization, lasting from July 6th to the 12th [see T. 423], do not satisfy this definition.[5]

_____

[5] Additionally, as the ALJ noted, the Plaintiff's 2009 hospitalization predates the relevant onset date by nearly a year. [See Tr. 463]. Even if the 2009 hospitalization were properly considered, however, the records from the Good Samaritan Clinic from July 2009

14

For the reasons set forth above, substantial evidence supports the ALJ's well-explained finding that Plaintiff did not meet or equal Listing 12.04 and/or Listing 12.08.

### 2. Listing 12.09 (substance-addiction disorders)

Listing 12.09 contemplates "[b]ehavioral changes or physical changes associated with the regular use of substances that affect the central nervous system, with the required level of severity being met when the requirements for various other impairments (to be evaluated under other Listings) are satisfied. 20 C.F.R. Pt. 404, Subpt. P, App. 1 (12.09). Particularly relevant here would be the requirements of depressive syndrome (evaluated under Listing 12.04) and personality disorders (evaluated under Listing 12.08).

The ALJ did not make an explicit finding specifically regarding Listing 12.09; however, the failure to make such findings is not reversible error, as there is not any significant evidence in the record to suggest that the Plaintiff suffered from a Listing-level substance addiction. See Reynolds v. Astrue, No. 3:11cv49, 2012 WL 748668, at *4 (W.D.N.C. Mar. 8, 2012) ("[O]nly

_____

indicates that the Plaintiff was doing better after discharge. [T. 313, 457, 463]. Further, records from the Plaintiff's 2011 hospitalization indicate that she responded "briskly" with medication, was able to participate in group therapy without evidence of social anxiety, and had a GAF score at discharge of about 70. [T. 424, 463]. This evidence suggests that these two, brief hospitalizations were not representative of the Plaintiff's baseline level of functioning during the relevant time period.

where there is ample evidence in the record to support a determination that a claimant's impairment meets or equals one of the listed impairments must the ALJ identify the relevant listed impairments and compare them to evidence of a plaintiff's symptoms."). Here, the ALJ found the Plaintiff's history of alcohol abuse to have been a non-severe impairment, noting that a recent record, from June 2013, shows Plaintiff's alcohol use to have been minimal. [T. 461, 973]. The Plaintiff does not challenge this finding. Even if the ALJ had proceeded to the next step of the analysis, the Plaintiff would have fared no better. There the Plaintiff would have had to show how her substance abuse had caused impairments recognized under Listings 12.04 and/or 12.08. For the reasons stated above, the Court concludes that the Plaintiff's impairments do not meet or equal those listings.

For all of these reasons, the Court concludes that the ALJ applied the correct legal standards in evaluating the Plaintiff's mental impairments at step three, and there is substantial evidence to support the ALJ's determination that her mental impairments do not meet or equal a Listing. Accordingly, the Plaintiff's first assignment of error is overruled.

## B. Evaluation of the Medical Evidence of Record

In her second assignment of error, the Plaintiff contends that the ALJ erred in failing to correctly evaluate or weigh the medical evidence of record.

Specifically, the Plaintiff argues: (1) that the ALJ erred in giving great weight to Dr. Barnes's consultative examination report; (2) that the ALJ erred in her evaluation of the GAF scores contained in the record; (3) that the ALJ erred in discounting the opinions of Tassie Masters, a treating certified nurse practitioner; (4) that the ALJ erred in giving little weight to the North Carolina disability determination for Medicaid; and (5) that the ALJ erred in failing to weigh the opinions of Dr. Willingham. Finally, while not medical evidence *per se*, the Plaintiff also contends as part of this assignment of error that the ALJ erred in giving little weight to the third-party opinion evidence from the Plaintiff's stepmother, Mary Bryson Fuller. The Court will address each of these arguments in turn.

### 1. Dr. Barnes's Opinions

Grace Barnes, Psy.D. performed a consultative psychological examination of Plaintiff in August 2010. [See T. 346-57]. Dr. Barnes noted in her report that the Plaintiff was able to complete all household chores. [T. 352-53, 458]. She assessed the Plaintiff's Global Assessment of Functioning ("GAF")[6] score as 65. [T. 355, 458]. She opined that the Plaintiff

---

[6] A GAF score represents a "clinician's judgment of the individual's overall level of functioning." Emrich v. Colvin, 90 F. Supp. 3d 480, 491 (M.D.N.C. 2015) (citations and internal quotation marks omitted).

was mildly impaired in social interaction but not impaired at all in understanding, memory, concentration, or persistence. [T. 356, 458]. Dr. Barnes explained that it appeared that the Plaintiff displayed symptoms suggestive of borderline personality disorder; however, Dr. Barnes noted, the Plaintiff evidenced no problems with understanding or responding to questions or directions; her memory, sustained concentration, persistence, and attention were grossly intact; she was expected to maintain the ability to adapt to changes in the work-place environment; and her social interaction was cooperative and appropriate. [T. 355, 458]. Dr. Barnes further opined that these results appeared to be consistent with the Plaintiff's behavioral, educational, and vocational history. [T. 355]. She then opined that, overall, from a psychological perspective, the Plaintiff had the "ability to maintain gainful employment without significant difficulties." [T. 355, 458].

The ALJ gave Dr. Barnes's opinion great weight, noting that Dr. Barnes's opinions were consistent with Dr. Willingham's report, the Plaintiff's reported ADLs, and recent records from Appalachian Community Services. [See T. 465-66].

The Plaintiff argues that, in evaluating Dr. Barnes's report, the ALJ improperly "selected pieces of the narrative she wished to highlight." [Doc. 9-1 at 12]. The Plaintiff points to her appearance at the time of the

examination, some aspects of her reported history, and her subjective complaints -- as well as some findings on the mental-status examination. [See id. at 13]. Contrary to the Plaintiff's argument, however, the portions of the report cited by the Plaintiff do not establish any "obvious limitations," nor do they indicate any internal inconsistency in Dr. Barnes's report. For example, regarding attitude and behavior, though Dr. Barnes noted that the Plaintiff was withdrawn and distant, she also noted that the Plaintiff had good contact with reality, was not intoxicated, did not exaggerate symptoms, and had normal non-verbal behavior. [T. 353]. Regarding mood and affect, while Dr. Barnes noted that the Plaintiff seemed apathetic with flat affect, she also noted that the Plaintiff described her mood as "all right." [Id.]. Regarding Dr. Barnes' finding of low average intelligence [T. 354], neither Dr. Barnes nor the ALJ indicated that the Plaintiff was capable of doing work that required higher intelligence. On the contrary, the ALJ limited Plaintiff to the performance of unskilled work, requiring no more than simple, routine, repetitive tasks, in a work environment that does not require fast-paced production [T. 463], limitations that adequately account for her low average intelligence.

The Plaintiff also argues that, "by giving great weight to this report, the ALJ contradicted her own findings that Plaintiff's mental impairments are

severe." [Doc. 9-1 at 14]. The fact that the ALJ gave great weight to Dr. Barnes's opinion, however, does not imply that the ALJ adopted every aspect of Dr. Barnes's report. Thus, there is no inconsistency in the ALJ finding that the Plaintiff's mental impairments were severe but that the limitations resulting from those impairments did not markedly impair her ability to work.

The ALJ properly considered Dr. Barnes's findings and opinions in the course of making her own findings regarding the paragraph B criteria. Regarding ADLs, the ALJ found that the Plaintiff had mild restriction due in part to the Plaintiff's report to Dr. Barnes of rather extensive ADLs. Regarding social functioning, the ALJ gave the Plaintiff the benefit of the doubt by finding that Plaintiff had moderate difficulties, whereas Dr. Barnes opined that the Plaintiff had only mild impairment in social interaction. Further, regarding concentration, persistence, and pace, the ALJ found that the Plaintiff's difficulties were only moderate due in part to Dr. Barnes's opinion that the Plaintiff was not impaired in memory, concentration, or persistence. Given the Plaintiff's difficulties in these areas, however, the ALJ specifically limited the Plaintiff to work that does not require fast-paced production. There is no error or inconsistency in the ALJ's reasoning in this regard.

## 2.    The GAF Scores

Next, the Plaintiff argues that, in analyzing the various GAF scores of record, the ALJ failed to include the GAF scores assessed upon the Plaintiff's admission to and discharge from Haywood Medical Center in June 2009 (GAF scores of 25 and 40, respectively). [Doc. 9-1 at 14].

The ALJ's failure to explicitly discuss these GAF scores does not require remand.   As the ALJ properly noted, the Plaintiff's 2009 hospitalization predates the relevant period for assessing disability.  [See T. 463].  Further, as the ALJ noted, a July 2009 treatment record indicates that the Plaintiff was doing better after discharge.  [T. 313, 457, 463].  Moreover, it must be noted that following Plaintiff's 2011 hospitalization, she responded "briskly" to medication, was able to participate in group therapy without evidence of social anxiety, and had a GAF at discharge of about 70 [T. 424, 463], all of which suggests that these hospitalizations were not representative of the Plaintiff's baseline level of functioning.[7]

---

[7] The Plaintiff argues in a footnote that it was improper for the ALJ to have "minimize[d]" the probative value of these GAF scores as well as other records predating the relevant period because the ALJ was "tasked with reviewing the 2008 [ALJ] determination" and because these records are part of the certified administrative record. [See Doc. 9-1 at 14 n.7].  The Plaintiff's argument is misplaced.  The ALJ was not "tasked with reviewing the 2008 decision" in the sense of reviewing the propriety of the decision.  Rather, the ALJ was directed by the Appeals Council to consider *the findings made* in the 2008 ALJ decision in adjudicating the Plaintiff's current disability claim.  [T. 573].  The ALJ complied with the Appeals Council's directives in this regard.   As noted by the ALJ, the prior decision is generally consistent with the decision at issue here, in that the RFC findings

For all of these reasons, the Court concludes that the ALJ did not err in evaluating the GAF scores of record.

### 3. Tassie Masters' Opinions

The Plaintiff argues that the ALJ erred in "completely discount[ing] the entirety of the evidence produced from Ms. Masters." [Doc. 9-1 at 15]. In particular, the Plaintiff points to observations that Ms. Masters made in a July 2010 office note, including that the Plaintiff had a very quick rage response; that she had been on numerous antipsychotics (but they all caused weight gain); that she complained of poor sleep; that her rate of speech was normal but with low volume; that her mood was mildly irritable; and that the diagnosis of significant mood lability was unchanged. [T. 343]. Ms. Masters noted that she wanted to try the Plaintiff on Lamictal and Ambien, and she continued Plaintiff on prazosin. [Id.].

The ALJ discussed the effectiveness of these medications in her decision. [T. 466]. Specifically, the ALJ noted that in a follow-up visit in October 2010, Ms. Masters indicated:

---

are very similar. [see T. 102-03] and in that both ALJs ultimately found that the Plaintiff was not disabled [see T. 107-08]. Thus, the 2008 ALJ decision does not advance the Plaintiff's case before this Court; if anything, it hinders the Plaintiff's case.

As for the Plaintiff's argument that this earlier evidence must be considered because it is part of the record, there was no error. The ALJ properly reviewed this record evidence but concluded that it was too distant in time to have any bearing on the issue of the Plaintiff's condition from the date of alleged onset forward.

> The client states that the Lamictal has worked very well for her mood stabilization, and she is very happy with the result. The Ambien is helping her sleep, and the prazosin is controlling her nightmares. Overall, she is very happy with her meds. She has not had any adverse effects from them.

[T. 398, 458, 466]. There is no merit to the argument that the ALJ completely discounted the aforementioned evidence. On the contrary, the ALJ clearly explained how Ms. Masters herself documented the resolution of the Plaintiff's complaints.

The ALJ further did not err in discounting Ms. Masters's October 2010 mental RFC assessment. In that assessment, Ms. Masters opined, among other things, that the Plaintiff would have to miss more than four days of work per month and that the Plaintiff had no useful ability to function in numerous areas, including carrying out very short and simple instructions, maintaining attention for two-hour segments, and interacting appropriately with the general public. [T. 364-65, 458, 466]. The ALJ did not err in giving this assessment little weight because Ms. Masters, as a nurse practitioner, is not an acceptable medical source under 20 C.F.R. 404.1513(a). <u>See</u> SSR 96-2p, 1996 WL 374188 (July 2, 1996) (rescinded Mar. 27, 2017). More importantly, her opinion "is contradicted by her own notes from an office visit that occurred the same day," which "indicate well-controlled mental illness, not debilitating limitations." [T. 466]. In addition, Ms. Masters' assessment

that the Plaintiff is unable to interact appropriately with the general public is inconsistent with the other evidence of record, including the Plaintiff's report to Dr. Barnes and her own hearing testimony that she was able to shop in public.  [See T. 352-53, 461-62, 489-92].  The ALJ did not err in assigning Ms. Masters' opinions little weight.

### 4.    The North Carolina Medicaid Determination

The North Carolina Department of Health and Human Services found in March 2011 that the Plaintiff was disabled for Medicaid purposes beginning in July 2010 because she met the requirements of Listing 12.08(A)(4) and (B)(2) and (3).  [T. 269-70].

The ALJ assigned little weight to this determination for several reasons.  First, the ALJ correctly explained that another government agency may use different rules in determining disability.  [T. 466-67].  Further, as the ALJ noted, SSR 06-03p -- which itself cites the regulations at 20 C.F.R. § 416.904 -- states that a decision by any other government agency about whether an individual is disabled is not binding on the Commissioner.  See SSR 06-03p, 2006 WL 2329939, at *7 (Aug. 9, 2006).  Moreover, as the ALJ found, the Medicaid agency's findings regarding the paragraph B criteria are inconsistent with the ALJ's well-supported findings regarding that same criteria.  That is, the Medicaid agency found that the Plaintiff's difficulties in

social functioning and in maintaining concentration, persistence, and pace were at least marked. [See T. 269]. This particular finding, and thus the Medicaid determination generally, is entitled to little weight as a substantive matter because, as explained above, substantial evidence supports the ALJ's finding that the Plaintiff's difficulties in these areas were only moderate.

The ALJ also explained that the Medicaid determination is due less weight because it does not take into account all of the evidence that pertains to the instant case. [T. 467]. There is substantial evidence to support this finding. The Medicaid determination was made in March 2011, whereas the ALJ decision at issue here involves the period from May 4, 2010, through December 22, 2014.

For all of these reasons, the Court finds that the ALJ did not err in giving little weight to the Medicaid disability determination.

### 5. Dr. Willingham's Opinions

Next, the Plaintiff argues that the ALJ failed to explicitly weigh Dr. Willingham's opinion. [Doc. 9-1 at 20-21]. The ALJ, however, discussed Dr. Willingham's findings in summarizing the evidence and in explaining how she relied on the consultative examination reports. [See T. 460, 464]. Significantly, the ALJ discussed Dr. Willingham's assignment of a GAF score, as well as Dr. Willingham's report, in giving great weight to the GAF

scores [see T. 465, 467]. While the Plaintiff cites to some abnormal findings in Dr. Willingham's report [see Doc. 9-1 at 20-21], these findings do not constitute or establish any specific functional limitation in excess of the ALJ's RFC finding. Accordingly, remand is not required for explicit assignment of weight to Dr. Willingham's report, particularly in light of the fact that the doctor's conclusions are reflected in the GAF score and that it is clear as to how the ALJ evaluated the report. See Joines v. Colvin, No. 3:14-cv-00396-MOC, 2015 WL 1249579, at *5 (W.D.N.C. Mar. 18, 2015) (stating that an ALJ's failure to explicitly state the weight given to an opinion may constitute harmless error where the weight given to the opinion is discernible from the decision and any grounds for discounting it are reasonably articulated).

The ALJ's failure, therefore, to explicitly weigh Dr. Willingham's opinions is not reversible error.

### 6. Mary Fuller's Opinions

The Plaintiff also argues that the ALJ erred in evaluating the opinions of the Plaintiff's stepmother, Mary Fuller. Specifically, the Plaintiff argues that Ms. Fuller has lived with the Plaintiff for over 30 years, that she is in the best position to know how Plaintiff functioned on a daily basis, and that her opinions should have been given at least some weight. [Doc. 9-1 at 16-20].

Ms. Fuller completed four reports describing the Plaintiff's functioning. [See T. 198-205, 223-30, 466, 708-15, 745-52).  Many of Ms. Fuller's observations, however, are not indicative of any functional limitations in excess of the ALJ's RFC finding.  Further, some of Ms. Fuller's statements are inconsistent with other record evidence, as the ALJ noted.  [See T. 466]. For example, while Ms. Fuller stated that the Plaintiff had problems with personal care, such that she had to tell Plaintiff when she needed a bath and her clothes were soiled [T. 199-200], the Plaintiff herself told Dr. Barnes that she could bathe and dress without assistance or reminding.  [T. 352-53]. Additionally, Dr. Johnston observed that the Plaintiff was appropriately dressed and groomed [T. 337, 457], and treatment notes indicate that the Plaintiff was appropriately dressed with good hygiene [Tr. 342, 458] or casually dressed and groomed [T. 343].  Further, while Ms. Fuller stated that someone always had to accompany the Plaintiff on shopping trips [T. 201, 226], the Plaintiff specifically testified that she sometimes shopped by herself [T. 462, 491-92]. While Ms. Fuller claimed that the Plaintiff had to be told how to do the laundry [T. 225], the Plaintiff testified simply that she did her own laundry [T. 462, 491], and the Plaintiff told Dr. Barnes that she was able to complete all household chores, including washing clothes [T. 352, 461]. While Ms. Fuller reported that the Plaintiff was afraid of driving [T. 714], the

Plaintiff testified that she drove to the hearing and indicated that she had a driver's license and was able to drive [T. 462, 492], and Dr. Marcus noted that the Plaintiff had a valid driver's license with no restrictions [T. 378].

For all of these reasons, the ALJ properly gave little weight to Ms. Fuller's lay opinions.

### C.    Hypothetical Question to the VE

Finally, the Plaintiff contends that the ALJ erred in formulating the RFC and in posing a proper hypothetical question to the VE.  Specifically, the Plaintiff contends that the hypothetical question failed to include certain limitations that the Plaintiff argues are warranted based on her testimony and the observations of her treatment providers.  [Doc. 9-1 at 22-23].  For the reasons discussed above, the Court concludes that there is substantial evidence to support the ALJ's RFC determination and therefore the hypothetical question posed to the VE was proper.  Accordingly, this third and final assignment of error is overruled.

For all of the reasons set forth above, the Court concludes that the ALJ applied the correct legal standards in reviewing the Plaintiff's claim.  The Court further finds that there is substantial evidence in the record to support the ALJ's finding that the Plaintiff was not under a disability, as defined by

the Social Security Act, during the relevant time period. Accordingly, the Commissioner's decision is hereby affirmed.

## O R D E R

Accordingly, **IT IS, THEREFORE, ORDERED** that the Plaintiff's Motion for Summary Judgment [Doc. 9] is **DENIED**; the Defendant's Motion for Summary Judgment [Doc. 10] is **GRANTED**; the decision of the Commissioner is **AFFIRMED**; and this case is hereby **DISMISSED**. A judgment shall be entered contemporaneously herewith.

**IT IS SO ORDERED.**

Signed: September 19, 2017

Martin Reidinger
United States District Judge